EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Appellant,

v.

MICHAEL CONSTRUCTION COMPANY, Appellee.

Nos. 82–1713, 82–2421.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1983.

Decided May 4, 1983.

Rehearing and Rehearing En Banc Denied June 1, 1983.

Michael J. Connolly, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vella M. Fink, Asst. Gen. Counsel, Lorraine C. Davis, Atty., E.E.O.C., Washington, D.C., for appellant.

Theodore C. Skokos, Gill, Skokos, Simpson, Buford & Owen, Little Rock, Ark., and Thomas A. Harris, Milligan, Hooper, Harris & Barry, Chattanooga, Tenn., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

The Equal Employment Opportunity Commission [EEOC] petitioned the United States District Court for the Eastern District of Arkansas to enforce an administrative subpoena *duces tecum* issued to the Michael Construction Co. [Michael Construction] during the EEOC investigation of a racial discrimination charge filed by Roy Jackson against the company. The district court refused to enforce the subpoena, and awarded Michael Construction attorneys' fees as a prevailing defendant. We reverse and remand for enforcement of the subpoena.

## I. FACTS

On May 14, 1980, Roy Jackson filed a charge of racial discrimination in the Little Rock, Arkansas, area office of the EEOC. The body of Jackson's charge read as follows:

I was hired about 1–2–80. I was discharged on 2–11–80.

When I reported to work on 2–11–80 Patricia Robinson, the secretary, told me I had to see Glenn Robinson, the project engineer, or Paul *LNU* [last name unknown], the superintendent.

I believe that this is race discrimination because:

1. For five days I reported to work and just got the run around. They weren't around to find.

2. I was absent on Feb. 6, 7, and 8, but I called in on 2–7–80.

3. The company told the unemployment office that I was absent for two weeks, as of 2–6–80.

On May 16, 1980, the EEOC sent the company a notice of the charge with a copy of the charge attached.

The company responded to the notice and charge with a letter to the EEOC, dated May 30, 1980, and four signed statements by company personnel indicating that the company replaced Jackson on February 13, 1980, on the assumption that his absence since February 6, 1980, amounted to a voluntary resignation. In September of 1980, Bama N. Gardner, the EEOC specialist assigned to Jackson's case, sent Michael Construction a notice requiring the attendance of company officials at a fact-finding conference scheduled for October 14, 1980, and a "Discharge/General Questionnaire" requesting information surrounding Jackson's discharge and the company's disciplinary records and policies since January 1, 1980. In a letter dated October 8, 1980, the company asserted that the charge failed to allege any facts indicating racial discrimination and declined to forward any of the requested information.

The company failed to attend the fact-finding conference, at which Jackson stated that at least one white employee had been absent under circumstances similar to those involved in his case and had not been discharged. On October 21, 1980, the EEOC again wrote to Michael Construction requesting information relevant to Jackson's charge, narrowing the scope of one request for attendance records of other employees to the period from January 21, 1980, through February 11, 1980, and directing the company that the EEOC could subpoena the requested information if withheld. The company, by letter dated October 31, 1980,

again refused to volunteer the requested information and stated, "If you can tell us anything that the complainant has told you that would warrant a suspicion that our company may have discriminated because of race, then we would address that alleged fact or those alleged facts."

Finally, on February 9, 1981, the EEOC issued a subpoena *duces tecum* for the desired information. The company sought revocation of the subpoena before the agency. After administrative denial of the company's request, the EEOC filed the present action to enforce its subpoena on December 8, 1981.

## II. DISTRICT COURT FINDINGS AND CONCLUSIONS

After a two-day hearing on the petition to enforce the EEOC subpoena, the district court stated its findings of fact and conclusions of law from the bench on April 14, 1982. The court noted that the proceeding raised two main issues: (1) the "adequacy and sufficiency" of Jackson's charge of racial discrimination and the EEOC notice of the charge, and (2) the good faith of the EEOC in investigating the charge. On the first issue, the court held that "the charge and the notice, which did not in any way amplify or expand upon the charge, is inadequate under the law for failure to state 'the circumstances of the alleged unlawful employment practice.' "

On the good faith issue, the court found that Gardner, the EEOC specialist assigned to Jackson's case, telephoned Ronald Jobe, the company's project engineer and equal employment opportunity officer, shortly after she sent the notice of the fact-finding conference and the EEOC questionnaire. The court stated that, during the conversation, "Mr. Jobe asked [Gardner] if she saw any validity in the claim. Ms. Gardner answered that she did not, but that that was really not the issue—that is, her personal view. Ms. Gardner then inquired of Mr. Jobe what restitution the company might be willing to make to Mr. Jackson." Based on this evidence and the company's October 31, 1980, letter to the EEOC requesting any facts tending to support a finding of racial discrimination, the court found that "the sending of the questionnaire and the scheduling of the conference and the pursuing of the discovery process was, at least, partially intended to bring about a monetary settlement in the case on behalf of Mr. Jackson." It concluded that Gardner viewed her duties to include the encouragement of settlements in all cases. The court called the exercise of that view in Jackson's case an example of "bureaucratic arrogance," and therefore refused to "lend its power to the enforcement of the administrative subpoena."

■ In addition, the court awarded attorneys' fees to Michael Construction based on the standard articulated in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Under this standard, attorneys' fees may be awarded to a prevailing defendant in an employment discrimination case where "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700. The court found that the EEOC investigation was not in "subjective bad faith" and that Jackson's charge, considered in conjunction with the EEOC file on his case, was not "frivolous," but that the EEOC proceeded in an unreasonable way and without foundation. The court stated that the EEOC "proceeded upon a charge that did not meet the statutory requirements. * * * * [It used the investigative process] to bring the company to a decision to pay to Mr. Jackson some amount, albeit nominal, to get rid of the case."[1] The court then directed the company's attorneys

---

1. In its written order awarding attorneys' fees to the company on October 13, 1982, the court simply stated that it had found the EEOC investigation and enforcement action "frivolous, unreasonable, and without foundation, even though not brought in subjective bad faith."

This discrepancy in its oral conclusions and written order is irrelevant, because as a result of our decision Michael Construction is no longer a prevailing defendant entitled to attorneys' fees.

to submit affidavits detailing their fees. On October 13, 1982, it awarded Michael Construction attorneys' fees for all legal work done after the company's October 21, 1980, letter, which put the EEOC "on notice * * * that the [company] was requesting specific allegations before it would comply with the subpoena."

## III. SUFFICIENCY OF THE CHARGE AND NOTICE

■ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e through 2000e–17 (1976 & Supp. IV 1980), grants the EEOC access to evidence of unlawful employment practices which is relevant to a charge of employment discrimination under that title. *Id.* § 2000e–8(a) (1976). Furthermore, the EEOC has the right to administratively subpoena that information and seek judicial enforcement of such a subpoena in the event of noncompliance. *Id.* § 2000e–9 (1976); 29 U.S.C. § 161(2) (1976). If the court finds that the charge or the notice of the charge, which the EEOC sends to the alleged discriminating party [respondent], is not sufficient under Title VII or EEOC regulations, it may deny judicial enforcement of an EEOC subpoena issued pursuant to that charge or notice. *See Shell Oil Co. v. United States EEOC,* 676 F.2d 322, 323 (8th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1181, 75 L.Ed.2d 429 (1983); *EEOC v. Dean Witter Co.,* 643 F.2d 1334, 1335 (9th Cir.1980); *EEOC v. Western Publishing Co.,* 502 F.2d 599, 603 (8th Cir.1974).

As to a charge of racial discrimination and the notice thereof, Title VII explicitly requires:

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer * * * has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer * * * within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.

42 U.S.C. § 2000e–5(b) (1976). EEOC regulations provide that a Title VII charge should contain a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," 29 C.F.R. § 1601.12(a)(3) (1982); nonetheless, "a charge is sufficient when the Commission [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of," *id.* § 1601.12(b). The district court found that Jackson's charge and the notice thereof were legally insufficient under the statute and regulations because they failed to state "the circumstances of the alleged unlawful employment practice." We disagree.

■ As a preliminary matter, we emphasize that charges filed by individuals must be construed in a liberal manner in order to effectuate the remedial and humanitarian purposes of Title VII. *EEOC v. Western Publishing Co., supra,* 502 F.2d at 602–603. EEOC regulations, which give substance to Title VII's mandate that a charge "shall contain such information and be in such form as the Commission requires," 42 U.S.C. § 2000e–5(b) (1976), only require that a charge "describe generally the action or practices complained of," 29 C.F.R. § 1601.-12(b) (1982). Jackson unequivocally charged that the company discharged him and gave false information to the unemployment office after his discharge. Thus, the charge described *specifically* the *actions* "complained of," and was legally sufficient under even a conservative construction standard.[2]

2. The company also argues that Jackson's charge was insufficient on its face because his race was not noted thereon. This argument lacks merit. The company, the EEOC, and Jackson all knew his race, or had easy access to that information, at the time he entered the Little Rock EEOC office to file his charge.

The company contends that, even if the law does not require more detail in the charge itself, the notice of Jackson's charge sent by the EEOC failed to meet the Title VII requirement that the notice include a statement of the "circumstances of the alleged unlawful employment practice," 42 U.S.C. § 2000e–5(b) (1976).[3] The company apparently reads this section to require a formal statement in the notice to the effect that the employer treated other employees more favorably because they were of a different race than the charging party. We refuse to adopt such a restrictive interpretation of the "circumstances" language in section 2000e–5(b).

■■■ Title VII mandates that prompt notice of a charge of racial discrimination be served to the respondent so charged. 42 U.S.C. § 2000e–5(b) (1976) (notice shall be served "within ten days" after charge is filed). The purpose of the notice is to apprise the respondent of the conduct which it might have to defend against claims of racial discrimination. *See EEOC v. Burlington Northern, Inc.,* 644 F.2d 717, 720 (8th Cir.1981) (notice provision intended to ensure due process rights of respondent). Consistent with this purpose, we hold that the "circumstances" to which Title VII refers are the circumstances of the employer's actions against the employee who alleges improper racial motivation. The notice of Jackson's charge—stating pertinent dates, the parties involved, and the conduct of Jackson and his superiors immediately prior to his discharge—clearly identifies the circumstances surrounding his discharge and application for unemployment benefits.

The notice in the present case also states Jackson's belief that the company's actions amounted to "race discrimination." Even though this allegation of discrimination is conclusory, it puts Michael Construction on notice that it is charged with treating Jackson adversely *because of his race* just as well as if the notice recounted instances in which the company treated employees of different races more favorably. *See EEOC v. Dean Witter Co., supra,* 643 F.2d at 1337. Specific instances of dissimilar treatment by the company of employees of other races may help decide the merits of Jackson's allegations, but these instances need not be recited in the notice.[4] To hold otherwise would penalize an employee who in fact was the victim of racial discrimination but who could not in good faith—and under oath, as required in section 2000e–5(b)—allege different treatment of employees of other races because of lack of information or because the victimized employee was the first to commit the infraction for which the employer allegedly disciplined that employ-

---

3. The language of section 2000e–5(b) is unclear as to whether the "circumstances" requirement applies to the charge, to the notice of the charge, or to both. *See EEOC v. Dean Witter Co.,* 643 F.2d 1334, 1337 n. 2 (9th Cir.1980). We believe that the statute is referring to the notice, but a finding on this matter is unnecessary since, in the instant case, the EEOC attached Jackson's charge to the notice and nothing in that notice further explained the circumstances of the charge. Thus, if the charge itself would not meet the "circumstances" requirement, the notice would likewise fail. Moreover, in most cases, EEOC regulations state a preference that the charge should contain a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3) (1982). We see no substantive distinction between the "statement of the facts" which will normally appear in a charge under the EEOC regulations and the "circumstances" required under the statute.

4. This reading of the "circumstances" language is not inconsistent with our holding in *Shell Oil Co. v. United States EEOC,* 676 F.2d 322 (8th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1181, 75 L.Ed.2d 429 (1983). In *Shell Oil,* a panel of this Court found the charge and notice in a Title VII case initiated by the Commissioner insufficient to support an action to enforce an EEOC investigatory subpoena. The charge and notice in that case, however, cited no specific actions by the employer which were allegedly motivated by racial animus nor any statistics indicating disparate impact. Without "some factual or statistical basis" underlying the EEOC's general allegation of "discrimination in all areas of employment practice," the panel held that the notice was insufficient. *Id.* at 326. In the instant case, the notice of Jackson's charge alleged specific facts of his discharge and of false statements made by the company to the unemployment office. These allegations supply the "factual" basis missing in *Shell Oil.*

ee.[5] Because the notice in the present case clearly identified the circumstances surrounding Jackson's discharge and application for unemployment benefits, we hold that the notice was sufficient under Title VII.

Thus, we find that the district court erred in denying enforcement of the EEOC subpoena based on the legal insufficiency of the notice and charge underlying that subpoena.

## IV. GOOD FAITH OF THE EEOC

Even though the charge and notice are legally sufficient to support judicial enforcement of the EEOC subpoena in the instant case, the district court could refuse to enforce the subpoena if the EEOC acted in bad faith in its investigation of Michael Construction. Such a refusal would be appropriate, because the EEOC is invoking the court's process and "a court may not permit its process to be abused." *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (footnote omitted).

Michael Construction raises the bad faith issue only by analogy to law which has developed primarily in the context of the judicial enforcement of Internal Revenue Service [IRS] summonses. *See generally United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *United States v. Powell, supra.* The Supreme Court has discussed four elements tending to prove the good faith of the IRS in a subpoena enforcement proceeding: (1) that the agency is conducting its investigation pursuant to a legitimate purpose; (2) that the administrative inquiry is relevant to that purpose; (3) that the agency does not already possess the information sought; and (4) that the agency has followed proper procedural steps in conducting its investigation. *United States v. Powell, supra*, 379 U.S. at 57–58, 85 S.Ct. at 254–55. Once the IRS makes a prima facie showing of good faith on each of these elements, a "heavy" burden shifts to the party contesting enforcement of the subpoena to prove bad faith, *e.g.*, by disproving any of the four elements. *United States v. LaSalle National Bank, supra*, 437 U.S. at 316–317, 98 S.Ct. at 2367–68. *See also United States v. Lask*, 703 F.2d 293, 297 (8th Cir.1983) (bad faith may be shown by disproving one of four *Powell* elements, but burden on summonee is a heavy one).[6] The basis of Michael

---

**5.** Michael Construction stresses that the EEOC learned from Jackson's "intake" interview and his testimony at the October 14, 1980, fact-finding conference that at least one white employee was absent in circumstances similar to those surrounding Jackson's absence and that the white employee was not discharged. Even though the EEOC might have more appropriately included this information in the notice or requested that Jackson amend his charge to this effect, it was not required to do so under the statute or regulations. *EEOC v. Dean Witter Co., supra*, 643 F.2d at 1339. A charge and notice otherwise sufficient under the statute and regulations do not become insufficient under those authorities because the EEOC could have provided more information to the respondent.

**6.** The Third Circuit recently indicated that a court might deny judicial enforcement of a Securities and Exchange Commission [SEC] subpoena even where the conduct of the SEC meets the good faith standards articulated in the IRS cases. *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 125–126 (3d Cir. 1981) (en banc) (court's process may be abused even absent administrative bad faith). The

only requirement other than good faith suggested by the majority in *Wheeling-Pittsburgh Steel*, however, was an SEC finding of a "likelihood" that a violation of the securities laws had occurred or was occurring. *Id.* at 127–130. Such a requirement is not free of criticism even in the face of SEC rules to that effect. *See id.* at 132–133 (Adams, J., dissenting) (with Seitz, C.J., Rosenn, and Higginbotham, JJ.) (courts should limit themselves to good faith standards in subpoena enforcement proceedings); Comment, *SEC v. Wheeling-Pittsburgh Steel Corp.: Bad Faith and the Abuse-of-Process Defense to Administrative Subpoenas*, 82 Colum.L.Rev. 811, 816–821 (1982).

Even if the "likelihood-of-a-violation" standard is appropriate in the context of an SEC investigation, we would not apply that standard to EEOC investigations because we have expressly held that "[r]easonable cause for finding a Title VII violation need not be established before an administrative subpoena may be validly issued. Rather, it is the function of such investigative subpoenas to establish whether reasonable cause to bring a discrimination charge exists." *EEOC v. Chrysler*

Construction's assertion of EEOC bad faith in the present case is that the EEOC did not conduct the investigation for a legitimate purpose; rather, the company asserts that the EEOC pursued the investigation to force a settlement regardless of the merits of Jackson's charge.

In its oral findings of fact after the hearings in this case, the district court found that the EEOC specialist investigating Jackson's charge pursued the investigation at least "partially" with the intent of achieving a monetary settlement even though, in her personal opinion, she saw no merit to Jackson's charge at that time. We hold that these findings of fact are not clearly erroneous. We disagree, however, with the court's implicit holding that such "partial" settlement motives on the part of the EEOC are not "legitimate."[7] Although the determination of whether the EEOC actually had certain purposes in mind when it pursued its investigation is a question of fact, which we could not reverse unless the district court committed clear error, the "legitimacy" of those purposes under Title VII is a question of law about which we can freely disagree with the district court. *See United States v. LaSalle National Bank, supra,* 437 U.S. at 319 n. 21, 98 S.Ct. at 2368 n. 21 (whether "good faith" is question of law or fact, district court's use of incorrect standard to measure good faith is a legal error).

■ The EEOC has many functions, one of which is to "attempt to achieve a negotiated settlement" of charges brought under Title VII. *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 595 n. 5, 101 S.Ct. 817, 821 n. 5, 66 L.Ed.2d 762 (1981). It also must investigate such charges to determine whether there is "reasonable cause" to be-

lieve the charges possess merit. 42 U.S.C. § 2000e–5(b) (1976). The subpoena power of the EEOC apparently extends only to the second function, that of "investigation." *See* 42 U.S.C. § 2000e–9 (1976) (subpoena power available for "the purpose of all hearings and investigations conducted by the Commission"). In order to preserve both of these functions, however, the EEOC may issue an administrative subpoena for information relevant and necessary to a determination of reasonable cause even though the subpoena may also provide additional incentive for the respondent to settle the charge. Otherwise, in practice, the EEOC could never seek judicial enforcement of an investigatory subpoena prior to a reasonable cause determination, at which time no further information would be needed, without totally abandoning its role in achieving an early negotiated settlement between the parties. *See EEOC v. Associated Dry Goods Corp., supra,* 449 U.S. at 595 n. 5, 101 S.Ct. at 821 n. 5 (EEOC normally begins settlement process prior to reasonable cause determination); *EEOC v. Chrysler Corp.,* 567 F.2d 754, 755 (8th Cir. 1977) (finding of reasonable cause not necessary prior to judicial enforcement of EEOC subpoena).

■ If the administrative subpoena is solely to coerce a settlement, however, it would not have any "legitimate purpose" and a court would be correct in denying judicial enforcement of that subpoena. *See United States v. LaSalle National Bank, supra,* 437 U.S. at 314 & 316 n. 18, 98 S.Ct. at 2367 n. 18 (civil IRS summons solely to further criminal investigation is for improper purpose). Furthermore, if the settlement motives of the EEOC induce it to expand the scope of an administrative sub-

*Corp.,* 567 F.2d 754, 755 (8th Cir.1977) (citations omitted).

**7.** We might remand this case based on the analysis in *United States v. LaSalle National Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978), in which the Supreme Court held that the improper intent of an individual agent is an insufficient reason to deny judicial enforcement of an administrative subpoena; the intent of the *agency* as a whole is

the deciding issue. *See also NLRB v. Interstate Dress Carriers, Inc.,* 610 F.2d 99, 112 (3d Cir. 1979) ("institutional good faith" test applicable to enforcement of NLRB subpoena). Such a remand is not necessary in this case, however, because we find that, as a matter of law, the EEOC investigation was proper even ascribing all the motives of EEOC specialist Gardner which can be derived from this record to the agency itself.

poena which is otherwise pursuant to a proper investigation on the question of reasonable cause, the subpoenaed party may seek judicial protection to limit the scope of the subpoena to information relevant and necessary to the reasonable cause determination. Finally, the EEOC must dismiss a charge if it finds no reasonable cause after its investigation of the charge. 42 U.S.C. § 2000e–5(b) (1976); *EEOC v. Associated Dry Goods Corp., supra,* 449 U.S. at 595, 101 S.Ct. at 820–21.

 In the instant case, the district court merely found that the EEOC pursued the investigation of Jackson's charge *in part* to further the possibility of a negotiated settlement. Nothing in the court's findings indicates that settlement was the sole motive of any part of the investigation,[8] so the court's implicit determination that the motives behind the investigation were not "legitimate" is in error. Normally, since the court made an error of law which might have caused its findings of fact to be insufficient, we would remand for an explicit finding on the factual question of whether achieving settlement was the sole purpose of the EEOC investigation of Jackson's charge. Taking the findings made by the district court regarding bad faith as true and after a review of the entire record, however, we hold as a matter of law that the district court could not find that the EEOC acted solely to achieve settlement in this case.

The statements made by Gardner regarding her personal view of the merits of Jackson's charge came only after inquiries by Jobe, the company's equal employment opportunity officer. Gardner's opinion at that stage in the EEOC investigation of the charge does not tend to prove that the EEOC conducted the investigation solely to achieve a settlement. The EEOC need not, and indeed cannot in good faith, make a reasonable cause determination prior to its investigation of the charge—the factual basis for such a determination would be lacking. Gardner's response to Jobe's question was based on incomplete facts primarily because the company had from the start ignored EEOC requests for information going to the merits of the charge. The company agreed to give only what information it chose and to respond to specific factual allegations in the narrowest possible manner. This approach could easily conceal subtle acts of employment discrimination and would seriously hamper the EEOC in making an independent determination on reasonable cause. Finally, the EEOC in fact narrowed the scope of one of its information requests prior to its resort to the subpoena process. On these facts, neither we nor the district court could find that the EEOC had abandoned all legitimate purposes underlying its investigation. We therefore reverse the district court's refusal to enforce the administrative subpoena because of the allegedly "illegitimate" motives of the EEOC.

## V. CONCLUSION

We realize that employers are vulnerable to charges of racial discrimination which are totally without merit. The EEOC, however, cannot defer to the opinions of employers so charged; it has the statutory duty to make an independent investigation,

---

8. In support of its claim that the EEOC acted in bad faith, the company cites the district court's written order awarding it attorneys' fees in which the court found that the EEOC investigation and subpoena enforcement action were "frivolous, unreasonable, and without foundation." We decline to equate this language with a finding that the EEOC investigation was brought in bad faith. The findings and conclusions made by the court from the bench immediately after the hearings indicate that the court based its attorneys' fees determination on the fact that the EEOC "proceeded upon a charge that did not meet the statutory require-

ments." Because we hold that the charge and notice were legally sufficient, this basis for the court's negative findings concerning the EEOC investigation is incorrect. Furthermore, the district court made these findings under an erroneous conception of the law regarding subpoena enforcement, *i.e.,* that *partial* settlement motives by the EEOC constituted an "illegitimate" purpose on which a court could deny enforcement. Under a proper view of the law, these findings would be clearly erroneous. Therefore, we give the findings no weight in our consideration of the bad faith issue.

reasonable in scope, to determine for itself whether the charge of an aggrieved employee is more than just one individual's "belief." The courts, given the power to enforce EEOC subpoenas, are called to assist in good faith attempts to fulfill that duty. Because in the present case the EEOC acted on a sufficient charge, gave proper notice to the company, and subpoenaed information needed to test Jackson's "belief" of racial discrimination, we reverse and remand for enforcement of the subpoena. We reverse the award of attorneys' fees to Michael Construction in its entirety.