Diane **WITZSCHE**, Plaintiff,

v.

**JAEGER & HAINES, INC.**, Defendant.

Civ. No. 88–5061.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Feb. 1, 1989.

Lanny K. Solloway, Fayetteville, Ark., for plaintiff.

W.W. Bassett, Jr., Angie Doss, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case was brought by plaintiff under the provisions of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e). The court has jurisdiction under the provisions of that statute and 28 U.S.C. § 1331.

Plaintiff was employed by defendant between August 5, 1986, and September 24, 1987, when she was terminated. She says that she became pregnant between December 5, and December 10, 1986, and that she told her supervisor on January 12, 1987. Within a week of her termination she was employed by her present attorney, Lanny K. Solloway. On April 14, 1987, with Mr. Solloway's aid, she prepared and filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), claiming that she was terminated because of her pregnancy.

Apparently after an investigation, the Little Rock area office of the EEOC, acting through W.P. Brown, Director, notified plaintiff that:

> Examination of the evidence indicates: that Charging Party was discharged because of a poor attendance record, falling asleep at work, and unauthorized usage of the company's vehicle. Based on this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute.

In spite of this finding, plaintiff, through her attorney, on May 13, 1988, filed the complaint instituting this action. The complaint was signed by Mr. Solloway in her behalf. The case was tried to the court on November 18, 1988, and, at the conclusion of the evidence, the court ruled from the bench that plaintiff had failed to meet her burden of proving that her pregnancy was

a motivating factor in defendant's decision to terminate her employment.

Defendant then moved the court for an allowance of attorney's fees and costs in the total amount of $9,454.36. Plaintiff has responded and both parties have briefed the issues. The court is now prepared to rule.

## MERITS OF THE CASE

■ At the close of the evidence in this case, the court ruled orally from the bench that plaintiff had not produced "one whit of evidence" or "even a smidgen of evidence" from which a reasonable person could conclude that her termination was in any way a result of her pregnancy, a pregnancy of less than one month at the time she notified her supervisor of it, and of barely two months when she was terminated. In this respect, in addition to her own testimony, plaintiff called four witnesses. Not one of these witnesses came even close to testifying to any facts from which the court could conclude that her pregnancy had anything to do with the employment decisions made by her employer. In fact, based on the evidence which Ms. Witzsche and Mr. Solloway were able to produce at the trial, the court has a great deal of difficulty understanding why this lawsuit was initially filed, and why it was pursued by them to its conclusion by trial. In view of the quality of the evidence adduced by them, it appears that, for one to truly believe that the pregnancy had anything to do with the employment decision, would require a certain amount of paranoia.

In this respect, the court has noted with some alarm over the last few years that it sees more frivolous Title VII cases than any other type filed in this court. It appears that many persons who are not as successful in their employment as they desire to be, automatically believe, or pretend to believe, that their lack of success must have been due to the discrimination of someone. The court hastens to say that it recognizes that these provisions of the Civil Rights Act of 1964 had a laudable purpose, and in the proper case, still do. However, the court sees far too many cases in which

the best advice that a lawyer could give to his client during the first conference, or at least after the facts are discovered, is that, "you have no case—forget about it and get on with your life."

It is obvious to the court that that is exactly the advice that Mr. Solloway should have given Ms. Witzsche in this case. While it is recognized that an adverse determination by the EEOC does not necessarily mean that the charging party has no Title VII case in every instance, the explicit finding of the commission in this case should have at least caused Ms. Witzsche and Mr. Solloway to "wonder" and should have been a warning to Mr. Solloway that he should, before a lawsuit was filed, carefully investigate the "facts" as they were apparently related to him by his client. The decision of the commission was January 29, 1988, and the lawsuit was filed on May 13, 1988, so he certainly had ample time to do so.

It is apparent from the file in this case that no such investigation was performed or it was woefully inadequate. A blatant example of this is the allegations of plaintiff and her attorney in relation to the expected testimony of Terry Sauls, a co-worker who was, on the date of the trial, still employed by defendant. In the complaint filed on May 13, 1988, it is alleged that this co-worker warned plaintiff not to tell her supervisor about her pregnancy because the supervisor "had given women who were pregnant a 'hard time' ". Then, in the pretrial conference information sheet filed almost six months after the complaint, and less than two weeks before the trial, Mr. Solloway says:

> During the first part of December, 1986, the Plaintiff became pregnant. During the week of January 5, 1987, the Plaintiff had a conversation with Terry Sauls, a co-worker, at which time the Plaintiff told Terry Sauls that she was pregnant. Terry Sauls told the Plaintiff not to tell Gloria Taylor until it was absolutely necessary because Gloria Taylor would give the Plaintiff a 'hard time'. At that time Terry Sauls told the Plaintiff that other

girls who had become pregnant in the past had been harassed by Gloria Taylor.

Plaintiff called Ms. Sauls as a witness at the trial and she did not testify to that, or anything remotely similar. Upon questioning by Mr. Solloway, she was asked:

Q. Did you tell Diane Witzsche that she should try to conceal her pregnancy for as long as possible before letting Gloria Taylor know because she might give the girls a hard time?

A. No sir, I told her that she should wait until she knew for sure she was pregnant before she told her supervisor.

Q. And why was that?

A. Well I didn't see any point in telling her she thought she was pregnant unless she knew she was.

She also specifically denied that she had told Ms. Witzsche that Gloria Taylor had given various other pregnant employees a "hard time" because of their pregnancy.

As indicated, plaintiff and her attorney were alleging as early as the filing of the complaint that Ms. Witzsche had been told that by Ms. Sauls. Ms. Sauls was employed by the defendant during that period and was obviously available for deposition, sworn statement, or a simple interview. It defies logic that such rudimentary trial preparation was not engaged in. If it had been, Mr. Solloway would have known long before the trial, and probably would have known long before the filing of the complaint, that Ms. Sauls would not support Ms. Witzsche's story. The court finds it incredible that this was apparently learned by both Mr. Solloway and Ms. Witzsche during the trial of the case and not before.

The only other witnesses called in behalf of Ms. Witzsche were her husband, who did not even claim to have any knowledge about the reasons for her termination, and, one of the owners of the defendant business, Larry Haines, and her supervisor, Gloria Taylor. Obviously neither Mr. Haines nor Ms. Taylor supported her position nor could they be expected to.

Certain statements made in plaintiff's response to the motion for attorney's fees, in the court's view, rather than supporting her position, show or should have shown to anyone, including plaintiff and her attorney, the weakness of her case. Mr. Solloway says in that filing: "Plaintiff's counsel truly believed that a bona fide case existed and that this was justiciable cause of action. Plaintiff's counsel believed that what Diane Witzsche had stated was correct and had no reason to disbelieve her." The court knows Mr. Solloway, and does not doubt his sincerity, but questions his judgment in respect to total reliance on claims made by clients without the slightest investigation to confirm such statements.

In support of his belief that plaintiff had a "justiciable cause of action", he says that:

[T]he fact that Jaeger & Haines employed some 20 to 30 females and that there was no written policy for pregnancy and maternity leave, certainly raise questions in counsel's mind. Moreover, the fact that seven females within a two year period terminated their employment with Jaeger & Haines, following their becoming pregnant, further supported a reasonable inference of discrimination.

Even if it is assumed that plaintiff's attorney could show those "facts", which he was not able to do in most respects, the court still asks how those alleged facts support an inference of discrimination? In respect to the lack of a written policy, the law does not require that a policy be in writing, but, instead, only that employers not discriminate against employees because of their pregnancy. He seems to believe that the fact, if it is a fact, that seven employees terminated their employment after becoming pregnant supports "a reasonable inference of discrimination". Why is that true and why would a reasonable person believe that it is true? He does not claim that those seven females were terminated because of their pregnancy, but just that they "terminated their employment". He had absolutely no evidence at the trial that any one of those individuals was terminated because of their pregnancy and, in fact, every witness who testified with any knowledge about those terminations, including some of those seven, denied that that was true.

It appears obvious to the court that a reasonable lawyer would have investigated this case soon after he was contacted by his client and, if Mr. Solloway had done so, the court is convinced that he would have discovered the weakness of his case and would then have had a duty to advise his client that the matter should not proceed further. After all, there was a determination made by the EEOC, and certain "facts" were available to him from that file. In this respect, he says, in his response to the motion for attorney's fees, that:

> Although Counsel requested the EEOC file in July, the file was not forwarded to Counsel until November. Admittedly, Counsel could have been more forceful in requesting the file. However, by the time Counsel had discovered that the EEOC had only forwarded a partial file, the trial was imminent.

Although this court knows the attorney for the plaintiff in this case to be a conscientious and honest lawyer, the court is constrained to hold, based on the facts reflected in this case, that he should have known, probably before the lawsuit was filed, and certainly before the trial, that the case had very questionable merit.

## STATUTORY BASIS FOR AWARD OF ATTORNEY'S FEES

■ 42 U.S.C. § 2000e–5(k) provides in pertinent part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...."

Although this provision does not say that, the law, as announced by numerous courts now clearly seems to be that prevailing plaintiffs are entitled to recover their attorney's fees, but that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978).

While it has been said that a showing of subjective bad faith is not a prerequisite to an award of attorney's fees against a plaintiff,[1] it is not totally clear to this court that that is the rule in the Eighth Circuit. In *Mosby v. Webster College*, 563 F.2d 901, 905 (8th Cir.1977) the court said:

> [W]e find in this case no demonstrable evidence of bad faith on the part of Dr. Mosby in bringing this action and accordingly decline to grant the requested fees.
>
> \*    \*    \*    \*    \*    \*
>
> Those factors which have prompted courts to award attorney's fees to a prevailing defendant are typified by a finding that the plaintiff brought his action in bad faith. (citing cases). We do not in this case attempt to define the outer limits of the concept of bad faith as used in this connection. It is sufficient for present purposes to know that Webster College made no attempt to demonstrate that Dr. Mosby's action was instituted for any reason other than her earnest belief that she was a victim of racial discrimination. Nor can we say that her legal theories were so empty and frivolous as to imply a vexatious motive. *Mosby*, 563 F.2d at 905.

It appears that that case may require a showing of "bad faith" or at least that plaintiff's theories are so "empty and frivolous" that a "vexatious motive" is implied.

The court could find only seven other cases out of the Eighth Circuit which discussed this issue[2], and none of these seemed to change that "standard". In fact those cases evidence a reluctance of the

1. *P. Mastrippolito & Sons, Inc. v. Joseph*, 692 F.2d 1384 (3rd Cir.1982).

2. *Bass v. Southwestern Bell Telephone, Inc., et al.*, 817 F.2d 44 (8th Cir.1987); *E.E.O.C. v. Kenneth Balk & Associates, Inc.*, 813 F.2d 197 (8th Cir.1987); *Aussie L. Robinson v. Monsanto Company*, 758 F.2d 331 (8th Cir.1985); *E.E.O.C. v. Michael Construction Company*, 706 F.2d 244 (8th Cir.1983), *cert. denied*, 464 U.S. 1038, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984); *Coleman v. General Motors Corp.*, 667 F.2d 704 (8th Cir. 1981); *Mary L. Bowers v. Kraft Foods, Corp.*, 606 F.2d 816 (8th Cir.1979); *Kendrick v. Commission of Zoological Subdistrict*, 565 F.2d 524 (8th Cir.1977).

court of Appeals for the Eighth Circuit to approve a trial court's award of attorney's fees against a losing plaintiff. Only in *Coleman, supra* at 708, did the court affirm the award of "only a small portion of the attorney's fee expense actually incurred" and did not discuss in any detail the standard to be applied, saying only that the small award was justified because plaintiff's charge of discrimination "was utterly groundless". In *Balk, supra, Michael, supra,* and *Bowers, supra,* the court reversed the trial court's award of fees to the winning defendant. In short, of the seven cases cited in footnote two, the trial court awarded fees and costs in favor of the winning defendant in only four and three of these were reversed on appeal, the only affirmance being in a case where "only a small portion" of the requested fees were awarded.

Because of the lack of merit in this case detailed above, it may be that 42 U.S.C. § 2000e–5(k) authorizes an award of an attorney's fee and costs in this case, but, in view of the cases cited above, and in the exercise of its discretion, the court declines to do so under this provision of law.

This statute seems to allow an award of an attorney's fee only against the plaintiff (not her attorney) and, for the reasons already discussed, the court believes that a great deal of blame for this case proceeding to the point that it has must regretfully lie with plaintiff's attorney. Under those circumstances, it does not seem "fair" to require her alone to pay the attorney's fees of the defendant. It is true that it has been said that the perception that counsel was primarily at fault in filing and maintaining a frivolous, groundless, unreasonable claim should play no role in a decision of whether to assess attorney's fees against her under this statute. *Beard v. Annis,* 730 F.2d 741 (11th Cir.1984). However, it would not appear that an award against only the plaintiff would serve the purpose that this court believes should be served in this case, particularly in view of the availability of Rule 11 of the Federal Rules of Civil Procedure discussed in more detail below. As the court said in *Kendrick, supra* at 528, "[I]t is doubtful a

judgment for attorney's fees would be of substantial value to the defendants, and it would likely place a heavy burden on the plaintiff."

## RULE 11 SANCTIONS

The sanctions imposed by Rule 11 are another matter. As every attorney should know by now, that rule imposes upon an attorney filing a lawsuit a duty to investigate the claim made by his client. An attorney, by signing a complaint, or other pleading, certifies, in effect, that he has made a reasonable inquiry, and that the allegations made in the complaint or other pleadings are "well grounded in fact" and are "warranted by existing law". When an attorney or a party violates that provision of Rule 11, it provides that the court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11.

For the reasons already discussed, the court does not believe that it can, in good conscience, say that plaintiff's attorney in this case met that burden. In his response to the motion for allowance of attorney's fees, he says that: "Counsel for Plaintiff is guilty of exercising poor judgment and inadequate trial presentation and performance in this case. However, counsel's motives were not malicious or of a sinister nature as the Defendant claims."

Under Rule 11, that is clearly beside the point. As the court said in *Kurkowski v. Volcker,* 819 F.2d 201, 204 (8th Cir.1987): "They cannot now argue that their subjective 'good faith' (i.e. ignorance of the law or legal procedures) somehow excuses their actions". Citing *O'Connell v. Champion Intl. Corp.,* 812 F.2d 393 (8th Cir.1987). *See also Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117 (8th Cir.1987) and *E.E.O. C. v. Milavetz & Assoc. P.A.,* 863 F.2d 613 (8th Cir.1988).

The court firmly believes that it has a duty to apply the law as it understands it to clearly developed facts, and when that is done in this case, it is commanded by Rule 11 to award appropriate sanctions. The rule says "shall" not "may". Under these circumstances, the court believes that it has little choice but to impose appropriate sanctions upon both the plaintiff and her attorney. "Rule 11 was adopted to spare innocent parties and overburdened courts from the filing of frivolous lawsuits. Another purpose is to deter plaintiffs from bringing actions that lack in factual or legal support." *Kurkowski, supra,* at 204.

However, the court believes that those salutary purposes of Rule 11 may be effected in this case without awarding sanctions against plaintiff and her attorney in the total amount of defendant's attorney's fees. As already indicated the court has little doubt that Mr. Solloway is a sincere and honest attorney. For the reasons indicated, the court believes that, for whatever reason, he failed to advise his client who had become his employee that she did not have a case and should forget about it, when Rule 11, under the facts that he should have discovered, compelled him to do so. The court believes and finds that the appropriate sanctions in this case necessary to carry out the purposes of Rule 11 are an award in favor of the defendant and against the plaintiff and her attorney, Lanny K. Solloway, jointly and severally, in the amount of $1,500.00 to be applied toward defendant's attorney's fees and costs expended in defending this matter.

As indicated above, the court has concern about the number of frivolous lawsuits that are continually filed in this court and, apparently, in every other court in the country. By this opinion, the court serves notice on other counsel that it will, in the future, where justified, liberally apply the sanctions contemplated and required by Rule 11 of the Federal Rules of Civil Procedure. In most cases, the court believes that the sanctions should, at a minimum, include an award of all of the attorney's fees and expenses incurred by the other side in defending a frivolous matter. Otherwise, one of the purposes of Rule 11, to spare innocent parties from the expense of defending frivolous lawsuits, is not realized.

The court does not mean for this opinion and its attitude about frivolous cases to have a chilling effect on parties and their attorneys who have lawsuits to file that even arguably have merit. Instead, the purpose is to make certain that lawyers understand that they simply must, as directed by Rule 11, "weed out" before they are filed baseless and frivolous lawsuits that are totally without merit as the court believes this one to be and to have been at the time the complaint was signed and filed.