James P. DUFFIELD, Plaintiff,

v.

FIRST NATIONAL BANK, SILOAM SPRINGS, ARKANSAS, Defendant.

Civ. No. 88–5137.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

June 7, 1989.

Robert White, Fayetteville, Ark., for plaintiff.

John R. Elrod, Elrod & Lee, Siloam Springs, Ark., for defendant.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Pending before the court is a motion by defendant asking that the court impose

sanctions against the plaintiff for violation of the provisions of Rule 11 of the Federal Rules of Civil Procedure. The motion was filed on May 2, 1989, and plaintiff's attorney did not get around to responding until May 30, 1989, some fourteen days after his time to do so had expired under the provisions of Rule 20 of the rules of the United States District Courts for the Eastern and Western Districts of Arkansas (Local Rules). This exceedingly untimely filing would justify the court striking the response but it will not, under the circumstances, do so, and will consider the matters contained in the response irrespective of its untimeliness.

Plaintiff, James P. Duffield, the son of O.F. and Sueann Duffield, had a checking account in defendant bank. Sometime prior to August 11, 1986, he agreed to utilize funds in that account to allow his father to post what was believed then to be a refundable deposit in connection with a loan that he was seeking in Dallas, Texas. His mother, Sueann, was a joint holder of the bank account, or at least she had authority to draw checks on it. Apparently with plaintiff's approval, on August 11, 1986, she purchased from defendant bank a cashier's check in the amount of $25,000 payable to Murray Savings Association. There were no restrictions on the cashier's check. In other words, it appears to be a rather ordinary cashier's check payable to the payee and there is no indication that the check was to be utilized for any particular purpose. It was delivered to the father, O.F. Duffield, who used it to pay the loan application fee in respect to the Dallas loan. The next day after it was issued, the payee, Murray Savings Association, endorsed the check and it was negotiated. Months later the Dallas loan "soured" and the loan application fee was apparently forfeited. According to filings in this case, that dispute has resulted in a lawsuit between O.F. Duffield and Murray Savings Association filed in the district court of Dallas, County, Texas.

In July, of 1988, the president of defendant bank received a letter from a Mena, Arkansas, lawyer, Danny Thrailkill, claiming that the cashier's check was improperly paid because it did not have "proper and legal endorsement." Demand was made that the bank refund to James Duffield $25,000. The bank's attorney responded, pointing out that the check was properly endorsed by Murray Savings Association, and that the bank owed Mr. Duffield nothing.

This lawsuit was then filed by Fayetteville attorney, Robert R. White, on September 12, 1988. That filing resulted in a letter from the bank's attorney dated September 14, 1988, pointing out to Mr. White that the bank had previously been contacted by Mr. Thrailkill and Mr. White was advised of the results of those contacts. It was claimed in the letter that when attorney Thrailkill was "advised of the true facts of the situation he essentially apologized, explained that he was a school friend of Jim Duffield, agreed that there was no liability on the part of the bank and that was the end of the matter until now." The attorney for the bank went on to advise Mr. White that the bank does not "like to be sued" and that he had been instructed by his client "to take whatever counter measures are available to us if Jim persists in this lawsuit." The bank's attorney then said that "after you have a chance to review the enclosed and talk to Jim, it is my hope that you will agree that the case should be dismissed forthwith without further adieu and before our answer date runs."

In spite of this invitation by the bank's attorney that Mr. White make the investigation required by Rule 11 if he had not already done so, Mr. White responded but set forth no basis for his belief, if he had one, that the bank owed his client money. He said:

As far as the bank not liking to be sued, I could care less; it certainly doesn't bother them to sue other people. Should the bank feel there is a counterclaim or that their dignity has been impugned, I feel sure that you will announce that in your response. I cannot imagine the lending institution being so upset at what might be considered a legitimate dispute. I can assure you that if Judge Waters

rules for me or he rules for you in this matter, that it won't be the first time that either one of us has taken it on the chin. Lord knows you are a good enough lawyer to make my clients out to be not very smart if in fact they are dead wrong.

The bank was required to file an answer and engage in discovery, including the deposition of plaintiff, Duffield. Subsequent to that deposition, on February 21, 1989, the defendant filed a motion for summary judgment. Although he was given almost two months to do so, plaintiff's attorney did not respond to the motion for summary judgment and the court, by judgment dated and entered April 17, 1989, granted the motion. The motion for Rule 11 sanctions followed.

In his late response, plaintiff's attorney contends that "this suit was brought in good faith and with good grounds to support it. As facts unknown to the plaintiff and his attorney were brought to light during discovery which changed the initial perception of this case, it was disposed of by summary judgment according to Rule 56." Inexplicably, he cites [1] and relies on cases decided long before the 1983 amendments to Rule 11, and quotes verbatim from the main volume of 5 Wright & Miller, *Federal Practice and Procedure: Civil*, § 1333, a volume that was copyrighted by West Publishing Company some 14 years before the Rule 11 amendments. It is not apparent from the response that it was recognized that the amendments were made, a fact that could have been readily determined from a cursory examination of the 1987 supplement to the above cited Wright & Miller article. Thus, it appears that plaintiff's counsel believes that "the signature of an attorney to a pleading amounts to an affirmation that he believes the pleading to have merit" and that little if anything is required of the attorney in forming that belief, relying on cases decided a great number of years before the 1983 amendments and on a discussion in the Wright & Miller treatise written years before.

As the supplement to the Wright & Miller volume points out, at § 1331:

> Rule 11 was amended in 1983 to expand the nature of the lawyer's certification requirement and to add new sanctions for its violation.

> \*     \*     \*     \*     \*     \*

> Rule 11 was amended in 1983 to expand significantly the nature of the signature requirement and to clarify the meaning of the certification. The amended rule substitutes a more focused standard of the one of 'good ground to support' the pleading and makes its requirements explicitly applicable to the attorney and unrepresented parties. It provides that the signature constitutes that the signer has read the document, 'that to the best of his knowledge, information, and belief *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....' (emphasis supplied).

5 Wright & Miller, *Federal Practice & Procedure: Civil*, § 1331.

Plaintiff's attorney seems to believe that the test is one of whether he acted in good faith in filing the complaint for his client. That has not been the law since August of 1983 when Rule 11 was amended. As the Court of Appeals for the Eighth Circuit said in *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir.1987): "They cannot now argue that their subjective 'good faith' (i.e. ignorance of the law or legal procedures) somehow excuses their actions." *Citing O'Connell v. Champion Int'l. Corp.*, 812 F.2d 393 (8th Cir.1987). *See also EEOC v. Milavetz and Assoc. P.A.*, 863 F.2d 613 (8th Cir.1988) and *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117 (8th Cir.1987).

As we said in our decision in *Witzsche v. Jaeger & Haines, Inc.*, 707 F.Supp. 407 (W.D.Ark.1989):

> The court firmly believes that it has a duty to apply the law as it understands it

---

[1]. *Freeman v. Kirby*, 27 F.R.D. 395 (S.D.N.Y. 1961); *Russo v. Sofia Bros., Inc.*, 2 F.R.D. 80 (S.D.N.Y., 1941).

to clearly developed facts, and when that is done in this case, it is commanded by Rule 11 to award appropriate sanctions. The rule says 'shall' not 'may'. Under these circumstances, the court believes that it has little choice but to impose appropriate sanctions upon both the plaintiff and her attorney.

'Rule 11 was adopted to spare innocent parties and overburdened courts from the filing of frivolous lawsuits. Another purpose is to deter plaintiff's from bringing actions that lack in factual or legal support.' *Kurkowski, supra,* at 204.

*Witzsche, supra,* at 412 (1989).

The attorney for the plaintiff says in his response that there were facts unknown to the plaintiff that were brought to light during discovery "which changed the initial perception of the case." The only discovery of which the court is aware, or at least the only discovery that was called to the court's attention, was the deposition of Mr. White's client. Rule 11 required that the attorney, at the very least, discuss the matter with his client to determine the factual basis for his potential lawsuit, and presumably, his client would have told him what his deposition later disclosed. In any event, the court does not believe that it would take a great deal of investigation in this case to determine that it had absolutely no basis. As indicated above, the cashier's check shows, on its face, that it was payable to Murray Savings Association, and that that Association endorsed it and negotiated it. It would seem to be elementary that the person or entity to whom a check is payable has the right to endorse it and cash it and that was all that was done in this case. Since that was true, how can any attorney, by signing the pleading, certify that "to the best of his knowledge, information, and belief, formed after reasonably inquiry, it is well grounded in fact and is warranted by existing law?" The answer clearly is that he cannot, and since Mr. White did so, the requirements of Rule 11 are clearly violated. When that occurs, the Rule specifically directs the trial court to impose appropriate sanctions.

In his letter to the attorney for the bank, responding to a request that he look at his case and determine whether it had any merit before additional expenditures were required, he said: "Lord knows you are a good enough lawyer to make my clients out to be not very smart if in fact they are dead wrong." The day has long since passed when a lawyer could file a lawsuit for a client and then determine or let opposing counsel determine whether there is a factual basis for his lawsuit. Rule 11 requires that the attorney, where possible, make that determination before suit is filed. In this case, all that should have been required to determine that the suit was frivolous is to view the cashier's check and note that it was payable to the same entity that endorsed it and negotiated it and then to ask his client whether any special instructions were conveyed to the bank in any manner. If that had been done, it is presumed that Mr. Duffield would have said the same thing that he said in his deposition which was that there were no such special instructions, or that at least he was not aware of any.

As we said in *Witzsche, supra,* at 412:
The court does not mean for this opinion and its attitude about frivolous cases to have a chilling effect on parties and their attorneys who have lawsuits to file that even arguably have merit. Instead, the purpose is to make certain that lawyers understand that they simply must, as directed by Rule 11, 'weed out' before they are filed, baseless and frivolous lawsuits that are totally without merit as the court believes this one to be and to have been at the time the complaint was signed and filed.

*Witzsche, supra,* at 412.

The banking transaction involved in this case was not a complicated one, and the court is at a complete loss to understand why any attorney would believe that there is something wrong with a bank paying a cashier's check endorsed and negotiated by the payee named on the check. The court believes that the receipt by Mr. White of a letter from the bank's attorney advising that another lawyer had initially had the

case and had apparently declined to pursue it and, in fact, allegedly apologized for his initial contact with the bank, whether true or not, should have raised a "red flag" that would have encouraged plaintiff's attorney to thoroughly investigate his client's claim before suit was filed. Instead, there is no indication that he even talked with Mr. Duffield's former attorney and in fact, he said in his letter to the bank's attorney that, "I have no idea what took place between him and the officers of First National Bank of Siloam Springs." Rule 11 imposed a duty on him to determine what had occurred. By filing the lawsuit before determining whether there was any merit in it, Rule 11 was violated.

The rule directs trial courts which have determined that the Rule has been violated to impose upon the person who signed the relevant pleading, a represented party, or both, "an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonably attorney's fee." The court determines that the appropriate sanction to be applied in this case is the attorney's fees and expenses of defendant bank in defending this meritless matter.

Defendant's attorney will have fourteen days from the date of this memorandum opinion to show to the court, by affidavit or other appropriate means, the amount of such expenses and attorney's fees. After plaintiff and his attorney have had a reasonable opportunity to contest, if they desire, the amount of such expenses and fees, the court will enter an order or judgment directing that plaintiff and his attorney, jointly and severally, pay to defendant the amount of its reasonable attorney's fees and expenses incurred in the defense of this case.