Bill R. **RUSZALA,** Plaintiff,

v.

**WALT DISNEY WORLD COMPANY, Dennis J. Ramos, and Kevin Beary, in his official capacity as Sheriff of Orange County, Florida,** Defendants.

No. 6:98–CV–988–ORL–18C.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 19, 2000.

---

1348

Scott Louis Sterling, Orlando, FL, for Bill R. Ruszala, plaintiff.

David Leonard Evans, Mateer & Harbert, P.A., Orlando, FL, for Walt Disney World Co., Dennis J. Ramos, defendants.

Bruce R. Bogan, Hilyard, Bogan, Palmer & Lockeby, P.A., Orlando, FL, for Kevin Beary.

## ORDER

G. KENDALL SHARP, Senior District Judge.

So ordered.

## REPORT & RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for consideration at a hearing on October 17, 2000 on the following motion:

## I. BACKGROUND

On January 16, 1996, Corporal Robert Stephens, of the Orange County Sheriff's Office, responded to a request for service from Walt Disney World Company ("Walt Disney"). Upon his arrival at the Walt Disney offices, Corporal Stephens obtained the following information. Walt Disney was investigating possible employee theft at Walt Disney's Ohana restaurant. Plaintiff Bill R. Ruszala was a server at Walt Disney's Ohana restaurant. A documented analysis of the restaurant's computerized transaction log revealed a discrepancy between the number of guests that Ruszala "rung up" on the register and the number of guests actually served by Ruszala. Walt Disney security investigators, Phillip McNab and Dennis J. Ramos, interviewed Ruszala at the Walt Disney security offices. During the interview, Ruszala confessed to stealing money from Walt Disney's Ohana Restaurant.

After obtaining the foregoing information, Corporal Stephens entered the room where Ruszala was located. Before asking Ruszala any questions, Corporal Stephens advised Ruszala of his right to an attorney. When Ruszala asked for an attorney, Corporal Stephens ceased questioning him and placed Ruszala under arrest on the charge of employee theft.

On June 29, 1998, Ruszala brought this action against defendants Walt Disney, Dennis Ramos, and Kevin Beary as Sheriff of Orange County, Florida, in connection with his arrest on January 16, 1996.[1] In total, Ruszala alleged six causes of action including: false imprisonment, false arrest, malicious prosecution, defamation, violating of civil rights, and conspiracy to violate civil rights. Specific to Sheriff Beary, Ruszala alleged false arrest and conspiracy to violate civil rights in violation of 42 U.S.C. § 1983. The only basis for adding Sheriff Beary as a defendant was that Corporal Stephens purportedly did not have personal knowledge of the facts purporting to constitute probable cause for Ruszala's arrest. Ruszala claimed that Corporal Stephens impermissibly relied solely on Walt Disney's private security

---

1. On March 15, 2000, the Court dismissed Ruszala's claims against defendants Philip McNab, Lori Shew, and Joan Weltrowski for failure to effect proper service in compliance with Fed.R.Civ.P. 4(m).

personnel to provide him information to support Ruszala's arrest.

On March 20, 2000, Sheriff Beary moved for summary judgment on Ruszala's claims of false arrest and conspiracy to violate civil rights. Docket No. 22. On April 25, 2000, the Honorable G. Kendall Sharp granted Sheriff Beary's motion for summary judgment as against Ruszala. Docket No. 37. On that same date, the Court ordered Ruszala and his attorney, Scott Sterling, to show cause within 2 days why they Should not be held jointly liable for Sheriff Beary's attorney's fees and costs incurred in defending this action. *See* 28 U.S.C. § 1920; Fed.R.Civ.P. 11; and 42 U.S.C. § 1988. On May 4, 2000, Beary filed a motion to tax costs and entitlement to attorneys' fees, together with his bill of costs. Docket Nos. 40 and 42. On May 5, 2000, the Clerk of Court taxed costs in the amount of $726.02. Docket No. 42. On May 10, 2000, Ruszala filed a response to this Court's show cause order and defendant Kevin Beary's motion to tax costs and entitlement to attorney's fees. Docket No. 46. Ruszala did not object to the costs requested by Sheriff Beary and previously taxed by the Clerk of Court.

## II. *THE LAW*

### A. Standard for Attorney's Fees under 42 U.S.C. § 1988

The United States Congress has determined that a court, in its discretion, may award a reasonable attorney's fees, including expert fees, under 42 U.S.C. § 1988 to a prevailing party as part of its costs:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1983, 1985, 1986 of [Title 42] ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost.

42 U.S.C. § 1988.

■ In such cases, a prevailing defendant may recover its attorney's fees where it establishes that the plaintiff's actions were "frivolous, unreasonable, or without foundation," even though the action was not brought in subjective bad faith. *O'Neal v. DeKalb County,* 850 F.2d 653, 658 (11th Cir.1988); *see also Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Christiansburg Garment Company v. EEOC,* 434 U.S. 412, 414, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Cone Corp. v. Hillsborough County,* 157 F.R.D. 533, 540 (M.D.Fla.1994); *Desisto College, Inc. v. Town of Howey–In–The–Hills,* 718 F.Supp. 906 (M.D.Fla. 1989). The district court addresses attorney's fees awards to prevailing defendants on a case-by-case basis. *See Head v. Medford,* 62 F.3d 351, 355 (11th Cir.1995) (citing *Sullivan v. School Bd.,* 773 F.2d 1182, 1188–90 (11th Cir.1985)). The standard for awarding attorney's fees is a stringent one. *See Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1558 (11th Cir.1995).

■ A case is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation." *Sullivan,* 773 F.2d at 1188 (citing *Jones v. Texas Tech Univ.,* 656 F.2d 1137, 1145 (5th Cir.1981)). A Court must not focus on whether the claim was ultimately successful in determining frivolity. *Id.* In applying the test, the Court must remain cognizant of the Supreme Court's caution that:

> [i]n applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The

law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694.

■ Typical "frivolity" cases include those where summary judgment is decided in favor of the defendant or on a Fed. R.Civ.P. 41(b) motion for involuntary dismissal where the plaintiffs do not introduce any evidence in support of their claims. *See Sullivan,* 773 F.2d at 1189. A case is not frivolous where the plaintiffs provide sufficient evidence to support their claims. *Id.* Yet, where a plaintiff continues to litigate even after the claim was clearly groundless, frivolous, or unreasonable, an award of fees may be proper. *See Turner v. Sungard Business Systems, Inc.,* 91 F.3d 1418, 1423 (11th Cir.1996).

■ While the inquiry is not subject to immutable rules, the Eleventh Circuit looks to three factors in determining whether a prevailing defendant is entitled to an award of attorney's fees: 1.) whether plaintiffs established a prima facie case; 2.) whether defendant offered to settle; and 3.) whether the action was decided on dispositive motions rather than at a trial on the merits. *See Head v. Medford,* 62 F.3d 351, 356 (11th Cir.1995); *Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir.1985); *Cone,* 157 F.R.D. at 541.

■ In applying these three factors, the Court must remain cognizant of the definition of frivolity—whether an argument is "so lacking in arguable merit as to be groundless or without foundation." *See Sullivan,* 773 F.2d at 1188. Courts applying the three factors have been reluctant to award fees unless the plaintiffs refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest. *See Head,* 62 F.3d at 356; *Cone,* 157 F.R.D. at 540. A defen-

dant is not entitled to an award of attorney's fees and costs simply because it prevailed in summary judgment. *See, e.g., Head,* 62 F.3d at 356 ("merely because plaintiff did not ultimately prevail on her federal claims does not determine that her claims were groundless"). Rigid application of these factors would lead to a result that Congress did not intend—that any defendant who prevailed on a dispositive motion would be entitled to fees.

## B. Standard for Attorney's Fees under Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure imposes a duty upon attorneys and parties to refrain from filing or pursuing frivolous claims. Fed.R.Civ.P. 11(b). Rule 11 sanctions are proper:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996). Rule 11(c) allows a court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation," which may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ.P. 11(c)(2).

■ The objective standard for testing conduct under Rule 11 is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted. *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998). This court requires a two-step inquiry as to: 1.) whether the party's claims are objectively frivolous; and 2.) whether the person who signed the pleadings should have been aware that they were frivolous. *Alderman,* 158 F.3d at 524. Although

sanctions are warranted when the claimant exhibits a "deliberate indifference to obvious facts," they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law. 158 F.3d at 524. The purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression. 158 F.3d at 524. The grant of summary judgment, in and of itself, does not mean that an action is frivolous or warrants the imposition of sanctions. 158 F.3d at 524.

As amended in December 1993, Rule 11 makes clear the continuing nature of a litigant's responsibility under Rule 11. Under the 1993 amendment:

> It [Rule 11] also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable....
>
> ....
>
> [A] litigant's obligations with respect to the contents of these papers are not measured solely of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.

Fed.R.Civ.P. 11, advisory committee's note. Thus, Rule 11 sanctions are appropriate when a party pursues a claim after it is no longer tenable in fact or law.

## C. Standard for Attorney's Fees under 28 U.S.C. § 1927

■ 28 U.S.C. § 1927 governs counsel's liability for excessive costs. It provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Sanctions are appropriate against counsel when the court determines that counsel commits discovery abuses willfully and in bad faith for purposes of vexatiously and unreasonably multiplying the proceedings. *See Malautea v. Suzuki Motor Co. Inc.*, 987 F.2d 1536, 1541 (11th Cir.1993) (a fine and an award of attorney's fees against counsel were justified where counsel participated in a discovery cover-up, created unnecessary delay, and increased both cost of litigation and the burden on the court).

## D. The Amount of an Attorney's Fee Award

Historically, the federal courts have analyzed demands for attorney's fees pursuant to *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). *Johnson* set forth twelve factors to be considered in calculating a fee award.[2] The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorney's fees to comport with decisions of the United States Supreme Court. *Norman v. Housing Authority,* 836 F.2d 1292, 1299 (11th Cir. 1988). *Norman* adopted the lodestar approach for calculating attorney's fees. The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson,* 488 F.2d 714. *Norman,* 836 F.2d at 1298–99. The Eleventh Circuit applies the lodestar approach of *Norman* in determin-

---

**2.** Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

ing a reasonable attorney's fee. *See Camden I Condominium Assoc., Inc. v. Dunkle,* 946 F.2d 768, 772 (11th Cir.1991); *see also Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington v. Dague,* 505 U.S. 557, 559–60, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

The lodestar approach also governs the attorney's fees analysis under fee-shifting statutes. *City of Burlington v. Dague,* 505 U.S. 557, 561–62, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (lodestar figure has become the guiding light of our fee-shifting jurisprudence). This Court therefore applies the *Norman* lodestar approach in determining the parties' request for attorney's fees.

## 1. Reasonable Hourly Rate

 The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant,* 97 F.3d 1393 (11th Cir.1996); *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994); *Norman v. Housing Authority,* 836 F.2d 1292, 1299 (11th Cir. 1988). The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. *Norman,* 836 F.2d at 1299. The party seeking attorney's fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger,* 10 F.3d at 781, citing *Norman,* 836 F.2d at 1299. The court may consider direct evidence of rates for similar services or opinion evidence about rates. *Norman,* 836 F.2d at 1299.

 The Eleventh Circuit looks to skill as the ultimate determinate of com-

pensation level because experience and reputation are a mirror image of skill. *Norman,* 836 F.2d at 1300. Skill is evidenced by an attorney's initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other fundamental aspects of organization and efficiency. *Norman,* 836 F.2d at 1300–1301. Organization means that counsel plans effective discovery devices and does not use them randomly or for the mere purpose of going through established routines. Efficiency means doing exactly what needs to be done in a minimum time. *Norman,* 836 F.2d at 1301. Legal skill, therefore, correlates to a knowledge of both trial practice and substantive law. *Norman,* 836 F.2d at 1301. Although an attorney who must familiarize himself or herself with either aspect of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable skill to attorneys whose first actions are directed at the finer points of the case. *Norman,* 836 F.2d at 1301. Proficiency should yield efficiency, and the district court has ample discretion to discount the import of counsel's expertise. *Varner v. Century Finance Company, Inc.,* 738 F.2d 1143, 1149 (11th Cir.1984). No two attorneys possess the same skill, therefore the Court must look to the range provided by the evidence, and interpolate a reasonable market rate. *Norman,* 836 F.2d at 1300. In summary, the Court determines a reasonable rate by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. *Norman,* 836 F.2d at 1301; e.g., *Duckworth,* 97 F.3d at 1396.

## 2. Reasonable Hours Expended

The second step in determining the lodestar is to assess the reasonable number of hours expended in the litigation. *Norman,* 836 F.2d at 1302. Inquiry into the reasonable number of hours focuses on the exercise of "billing judgment"—exclusion of those hours not reasonably billable to a client irrespective of counsel's skill, there-

fore the Court must deduct for redundant hours. *Norman*, 836 F.2d at 1301–02, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A court must not consider an attorney's skill at this stage as this would constitute a double penalty—the rate would first be decreased and the hours would then be lowered. *Norman*, 836 F.2d at 1301.

The fee applicant bears the burden of documenting the appropriate number of hours. *Norman*, 836 F.2d at 1303, citing *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *United States v. Blue Cross and Blue Shield of Florida, Inc.*, 882 F.Supp. 166, 170 (M.D.Fla.1995). Generalized statements concerning reasonableness are of little or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397–99; *Norman*, 836 F.2d at 1301. Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an expert on the question, and may consider the request in light of its own knowledge and experience with or without the aid of witnesses as to value or hours dedicated to litigation. *Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1303.

### III. *APPLICATION*

This Court carefully evaluates Sheriff Beary's claim of frivolity given that the Court granted summary judgment before trial on the ground that no genuine issue of material fact remains as to whether Corporal Stephens had probable cause to arrest Ruszala.[3] *See* Docket No. 37. Finding that Ruszala's arrest was made pursuant to probable cause, the district court decided the action in Ruszala's favor on a dispositive motion rather than at a trial on the merits. Sheriff Beary is clearly a prevailing defendant.

Nevertheless, Congress has determined that success on summary judgment is not alone sufficient to require an assessment of attorney's fees. Congress could have enacted legislation mandating an award of attorney's fees to all prevailing parties, but instead opted to leave such an award to the Court's discretion. 42 U.S.C. § 1988; Fed.R.Civ.P. 11(c).

The undersigned is unable to determine from the record whether Ruszala brought the claim in subjective bad faith, and therefore presumes that he did not. Nevertheless, in applying the stringent standard established by current case law, defendant Sheriff Beary has established that as of Ruszala's February 26, 1999 deposition, Ruszala's and his counsel's actions in litigating through summary judgment was frivolous, unreasonable, and without foundation. *See, e.g., Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. 694.

It is well established that probable cause to arrest exists if the facts and circumstances within the police officer's knowledge, of which he has reasonable trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir.1996). In this case, Corporal Stephens took statements from three Walt Disney employees and independently evaluated the document analysis of the restaurant's computer transaction logs. Before Ruszala was arrested, Ruszala did nothing to raise any doubt in Corporal Stephens mind as to the validity of his reported confession. Nonetheless, Ruszala argued that Corporal Stephens should have questioned Walt Disney's employees' truthfulness in reporting Ruszala's supposed confession when Ruszala told Corporal Stephens on the way to jail, "I didn't

---

**3.** This report and recommendation adopts and incorporates the factual findings in the April 25, 2000 order [Docket No. 37] specifying Ruszala's failures to state a claim on which relief could be granted against Sheriff Beary and granting Sheriff Beary's motion for summary judgment.

do it." However, any challenges to Ruszala's "supposed confession" were resolved by Ruszala's own admissions.

At the February 26, 1999 deposition, Ruszala admitted that he previously confessed to stealing money from Walt Disney's Ohana Restaurant. *See* Deposition of Bill Ruszala, Docket No. 26 at 104. Ruszala also said that Corporal Stephens acted in a very professional manner and that Corporal Stephens "wouldn't violate my civil rights." Docket No. 26 at 104. Ruszala further admitted that Corporal Stephens had no reason not to believe the Walt Disney security people when they advised Corporal Stephens that Ruszala had confessed to committing a theft. Docket No. 26 at 89. Additionally, Ruszala stated that Corporal Stephens "arrested me because I confessed to something. Like I said, I knew he had a job to do, so apparently I believed he was doing his job as he though he was suppose to." Docket No. 26 at 104. By Ruszala's own admissions, Corporal Stevens had probable cause to arrest Ruszala.

Subsequent to Ruszala's February 26, 1999 deposition, Sheriff Beary's counsel, Bruce R. Bogan, sent two letters to Ruszala's counsel on June 24, 1999 and on December 28, 1999. In those letters, Bogan asked Ruszala to withdraw his claims against Sheriff Beary. *See* Docket No. 40, Exhibit A. In the December 28, 1999 letter, Bogan warned counsel that if Sheriff Beary was not voluntarily dismissed from this suit, Sheriff Beary would seek attorney's fees and costs on the basis that the action was frivolous. *See* Docket No. 40, Exhibit A.

In light of these factors, the Court finds that the false arrest claim and the conspiracy to violate civil rights claim stemming from an arrest without probable cause were unreasonable and without foundation. The facts of the case overwhelmingly supported a finding of probable case, particularly Ruszala's own statements. During his deposition, Ruszala admitted that Corporal Sheriff acted in a professional manner, that Corporal Stephens arrested Ruszala because of Ruszala's confession, and that Ruszala believed that Corporal Stephens did not violate his civil rights.

It is clear to the undersigned that after Ruszala's deposition Ruszala and his attorney were clearly on notice that Ruszala's claims lacked any basis in fact or law. Yet, it is equally clear that Ruszala and his attorney continued the pursuit of their claims against Sheriff Beary even when it became patently clear that Ruszala's claims had no chance of success. In applying the objective standard of reasonableness test, the Court finds that Ruszala and his counsel violated Rule 11 by pursuing claims that were not tenable despite overwhelming evidence of probable cause—an absolute defense to the claims asserted in the complaint.

In considering the nature of sanctions to be imposed, the Court finds that monetary penalty in the form of attorney's fees is the minimum necessary to deter such future conduct. As already discussed, Ruszala's claims against Sheriff Beary lacked any merit. The primary evidence presented in support of this conclusion was Ruszala's own testimony. This action did not turn on subtle, unsettled issues of law, nor did it involve close questions of facts. Under these circumstances, Sheriff Beary is entitled to attorney's fees expended in the defense of this case under Rule 11.

Sheriff Beary is also entitled to recover attorney's fees as a prevailing party under 42 U.S.C. § 1988. For the reasons stated above, as of Ruszala's February 26, 1999 deposition, the plaintiff should have known that the action against Sheriff Beary was frivolous, unreasonable, and without foundation.

## IV. *CONCLUSION*

For the reasons set forth above, it is **RECOMMENDED** that defendant Kevin Beary's motion to tax costs and for entitlement to attorneys' fees [Docket No. 40] be **GRANTED.** Pursuant to Rule 11 of the

Federal Rules of Civil Procedure and 42 U.S.C. § 1988, plaintiff Bill Ruszala and his counsel should be held jointly liable for the attorney's fees incurred by Sheriff Beary in the amount stipulated to by the parties at Docket No. 55.

Failure to file and serve written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of this report and recommendation shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal. Any party filing an objection to this ruling shall also file and serve a copy of the transcript of the October 17, 2000 hearing on the same day.

Nov. 28, 2000.