**Nicole TORRES, Plaintiff,**

v.

**CITY OF ORLANDO, Defendant.**

**Case No. 6:01–cv–737–Orl–31DAB.**

United States District Court,
M.D. Florida,
Orlando Division.

April 7, 2003.

John Vernon Head, P.A., Orlando, FL, for plaintiff.

Teresa Adamson Herrmann, Akerman, Senterfitt & Eidson, P.A., Benton N. Wood, Muller Mintz, P.A., Orlando, FL, for defendant.

## ORDER

PRESNELL, District Judge.

This cause comes before the Court upon consideration of:

1) Defendant's Motion for Reimbursement of Costs and Attorneys' Fees (Doc. 44), and Memorandum of Law in Support (Doc. 45); as well as

2) Plaintiff's Response thereto (Doc. 47); Plaintiff's Counsel's Response thereto (Doc. 48) and Memorandum in Support (Doc. 49).

## I. Background

On June 9, 2000, the Orlando Police Department ("OPD") terminated Plaintiff from her position as a police officer upon finding that Plaintiff violated the OPD's truthfulness policy. Plaintiff was still on probationary status at the time of her termination and therefore was not entitled to any formal grievance procedure. Nonetheless, a representative of Plaintiff's union—Samuel Hoffman—represented Plaintiff in an abbreviated grievance process to which she was entitled.[1] Shortly thereafter, Mr. Hoffman directed Plaintiff to seek assistance from then union counsel, John Vernon Head.[2] Mr. Head filed a complaint

---

1. The pre-Complaint procedural history set forth herein was gleaned from Plaintiff's and Plaintiff's Counsel's briefs and Plaintiff's deposition testimony, filed at Document 34. Defendant has not contested this history.

2. Mr. Head also filed a Notice of Appeal to the Orlando Civil Service Board seeking to restore Plaintiff to her position as police officer. Plaintiff's appeal was denied due to her probationary status.

with the Equal Employment Opportunity Commission ("EEOC"), alleging discriminatory firing based on national origin (Plaintiff is Hispanic) and sex (Plaintiff is female). The EEOC complaint did not include a charge of racial discrimination. The EEOC provided Plaintiff with a right-to-sue letter, and thereafter, Mr. Head, as Plaintiff's undersigned counsel herein, filed a Complaint before this Court on June 19, 2001. The Complaint alleged that Plaintiff's termination from the OPD was based on national origin, race, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

Thereafter, Defendant answered the Complaint, and both parties engaged in discovery. On January 14, 2003, Defendant filed a Motion for Summary Judgment and a supporting Memorandum of Law. Plaintiff filed a reply, and the Court heard oral argument on February 26, 2003. At the hearing's conclusion, the Court granted Defendant's Motion and ruled from the bench that: 1) Plaintiff failed to produce any direct or circumstantial evidence of discrimination; 2) even if Plaintiff had made out a prima facie case of discrimination, Defendant had articulated a legitimate, non-discriminatory reason for terminating Plaintiff as a police officer; and 3) Plaintiff had offered no evidence of pretext. (Tr.[3] at 25–28). Determining that Plaintiff's lawsuit was "lacking in merit" and "frivolous," (*id.* at 26), the Court announced it would entertain from Defendant a motion for fees and costs against Plaintiff pursuant to 42 U.S.C. § 1988 and a motion for sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. (Tr. at 28). Defendant filed said motions on March 14, 2003, together with two supporting affidavits and other exhibits.

Plaintiff and Plaintiff's counsel filed reply briefs in opposition.

In its motions, Defendant seeks the following from Plaintiff: 1) court reporter fees, costs of stenographic transcripts, and copying fees pursuant to 28 U.S.C. § 1920(2) and (4); as well as 2) reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988(b). In addition, Defendant seeks from Plaintiff's counsel excess costs and attorneys' fees reasonably incurred in the matter pursuant to 28 U.S.C. § 1927. All told, Defendant requests that Plaintiff and Plaintiff's counsel jointly and severally reimburse Defendant an aggregate amount of $33,761.28 in costs and fees. The Court will address each request in turn.

## II. Analysis

### A. Costs Pursuant to 28 U.S.C. § 1920

■ Federal Rule of Civil Procedure 54(d) allows a prevailing party to be reimbursed for costs, and § 1920 sets forth which costs are reimbursable. Defendant requests [4] reimbursement of court reporter and stenographic transcript costs under § 1920(2) and reimbursement of copies under § 1920(4). As the prevailing party herein, Defendant is entitled to these costs.

### B. Attorneys' Fees Pursuant to 42 U.S.C. § 1988

Defendant argues that the Court should, in its discretion, award to Defendant reasonable attorneys' fees because Plaintiff's Title VII action was frivolous and groundless. Specifically, Defendant claims that Plaintiff failed to establish a prima facie case of discrimination by presenting no evidence of disparate treatment. Defendant also asserts that even if

---

**3.** A copy of the transcript of the February 26, 2003, hearing before this Court was filed at Document 43.

**4.** Plaintiff did not reply to Defendant's requests under § 1920.

Plaintiff did establish a prima facie case of discrimination, Defendant has articulated a legitimate, non-discriminatory reason for terminating her employment and Plaintiff offered no rebuttal evidence of pretext. Defendant finally argues that Plaintiff's deposition testimony and other factors demonstrate her bad faith pursuit of this action.

Section 1988(b) states: "In any action or proceeding to enforce a provision of . . . the Civil Rights Act of 1964 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Although fees under § 1988 are discretionary, the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), held that before awarding attorneys' fees, a prevailing Title VII defendant must show the Court that the plaintiff's claim was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith" or "that the plaintiff continued to litigate after it clearly became so." *Id.* at 421–22, 98 S.Ct. 694.[5] In making this determination, a court must avoid the post hoc temptation of finding the plaintiff's litigation meritless simply because she did not prevail at trial. *Id.* at 421–22, 98 S.Ct. 694; *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam). Indeed, this "hindsight logic could discourage all but the most airtight claims. . . ." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1188–89 (11th Cir.1985) (quoting *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. 694).

Determinations of frivolity are to be made on a case-by-case basis, but the Eleventh Circuit has identified three general guidelines: 1) whether the plaintiff established a prima facie case; 2) whether the defendant offered to settle; 3) whether the court held a full trial on the merits. *Sullivan*, 773 F.2d at 1189. Notably, a finding of bad faith—even if not subjective bad faith—constitutes a basis for attorneys' fees regardless of *Sullivan's* three factors. *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 n. 6 (11th Cir. 1996).

Without addressing *Christiansburg* or *Sullivan* and without citing any case law of her own, Plaintiff argues that she acted in good faith in pursuing this litigation. Plaintiff puts forth three items in support of her contention. First, she claims that upon reviewing the OPD's investigatory history and upon speaking with union representatives, she discovered arbitration decisions[6] pertaining to other officers—specifically Officers J.D. Ray and A.J. Sanderson—in which the OPD's course of discipline (termination) was found to be too harsh. Second, Plaintiff asserts that she "was aware" that Hispanic females were not represented in the OPD to the same extent as other minorities and that a white male officer[7] was only mildly reprimanded under "the same circumstances." (Doc. 47 at ¶ 8). Third, Plaintiff contends that she "sought relief in the only forum available to her" and "the belief that a fair and impartial investigation would have cleared her." (*Id.* at ¶ 9).

The Court finds that rather than demonstrating Plaintiff's good faith, these

---

5. This standard is stricter than the standard applicable to a prevailing plaintiff, who must be awarded attorneys' fees in "all but special circumstances." *Christiansburg*, 434 U.S. at 417, 98 S.Ct. 694.

6. These decisions were filed as Exhibits A and B to Document 47.

7. Though not named in Plaintiff's reply brief, the Court presumes that Plaintiff is referring to Scott Salvatoriello, a white male officer who Plaintiff claims was treated more favorably than her.

factors demonstrate that Plaintiff pursued her claims in bad faith. First, the written arbitration decisions [8] of Officers Ray and Sanderson in no way bear on whether the OPD discriminated against Plaintiff in violation of Title VII. It does not require a lawyer's training and ability to recognize that arbitrators' findings regarding excessive discipline of other officers on other charges do not suggest any basis to allege that the OPD discriminated against Plaintiff based on sex, national origin, or race.[9] Making such an inferential leap is absurd.

■ Second, it does not require an attorney's know-how to recognize that a low number of Hispanic female employees (which, in theory, might implicate improper hiring procedures) does not merit filing a lawsuit alleging discriminatory firing.[10] Moreover, the supposed evidence regarding the "white male officer" does not form a basis to allege that Plaintiff was improperly treated less favorably.[11] In fact, Plaintiff knew as a matter of fact that Salvatoriello's circumstances were not "similar" to her own; Plaintiff does not dispute that Salvatoriello was not found to be untruthful whereas Plaintiff was.

■ Third, despite her counsel's disagreement with the Court at the February 26 hearing, (Tr. at 21–23), it is evident that Plaintiff in fact seeks a *de novo* review of the OPD's internal investigation against her. She confirms this by stating that she seeks relief "in the only forum available to her" based merely on a "belief that a fair and impartial investigation would have cleared her [of being untruthful]." (Doc. 47 at ¶ 9). This Court ruled at the hearing: "The essence of the Plaintiff's case . . . is she was fired and she's Hispanic, therefore, they must have discriminated against her, and that's preposterous." (Tr. at 26–27). *See Finley v. Publix Super Markets, Inc.*, 1998 WL 1056998 at *2 (S.D.Fla.1998) ("Simply because a person who is of a protected class loses a job . . . does not automatically create a cause of action under the civil rights laws."); *Witzsche v. Jaeger & Haines, Inc.*, 707 F.Supp. 407, 408 (W.D.Ark.1989).[12] As *Beard v. Annis*, 730 F.2d 741, 744 (11th Cir.1984), stated: "This court does not sit in judgment over whether the defendants made the right employment decision . . ., only

8. Of course, Plaintiff was not entitled to a hearing as Officers Ray and Sanderson were, for Plaintiff was a probationary officer at the time of the untruthfulness investigation against her.

9. Even if the Court perceived Plaintiff's attorney as being primarily at fault for filing the frivolous claim, that perception should play no role in its determination to assess attorneys' fees against Plaintiff. *Beard v. Annis*, 730 F.2d 741, 745 (11th Cir.1984) (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 916 (11th Cir.1982)).

10. Plaintiff suggests that receipt of the right-to-sue letter from the EEOC led her to believe that she had a meritorious claim. However, receipt of an EEOC right-to-sue letter is it not itself sufficient to overcome a finding of frivolity under § 1988. *Bowers v. Kraft Foods Corp.*, 606 F.2d 816, 818 (8th Cir.1979).

11. Plaintiff does not dispute that OPD's internal policies dictate that a finding of untruthfulness results in termination of employment. Plaintiff admitted as much in her deposition. (Doc. 34 at 126).

12. The court in *Witzsche* proselytized, and this Court agrees:

the court has noted with some alarm over the last few years that it sees more frivolous Title VII cases than any other type filed in this court. It appears that many persons who are not as successful in their employment as they desire to be, automatically believe, or pretend to believe, that their lack of success must have been due to the discrimination of someone.

707 F.Supp. at 408.

whether the decision was made on the basis of race." Again, even a non-attorney would recognize that a person has no basis whatsoever to file a discrimination claim when admittedly seeking relief from an allegedly unfair internal investigation. Plaintiff's lawsuit was pursued in bad faith from the outset.

■■■■ Notably, even if, objectively speaking, Plaintiff had not acted in bad faith, the Court finds that, under the *Sullivan* factors, Plaintiff's claim was frivolous and without justification. First, Plaintiff did not establish a prima facie case of discrimination, as the Court ruled in open court on February 26. Second, any offer to settle here weighs in favor of Defendant, not Plaintiff.[13] Third, the Court dismissed the case on summary judgment, another factor in Defendant's favor. *Sullivan*, 773 F.2d at 1189 (noting that frivolity findings typically were sustained in cases dismissed involuntarily or by summary judgment due to the plaintiff's lack of evidence in support of the claims). Because Plaintiff's case was factually and legally

**13.** In Plaintiff's Counsel's Response, Plaintiff represented that Defendant told Plaintiff that if Defendant won, it would seek fees but if Plaintiff dismissed her claims, it would agree not to seek fees. (Doc. 48 at ¶ 14). This encouragement to settle demonstrates Defendant's warning to Plaintiff of the absolute frivolity of the case; it does not represent any effort by Defendant to avoid admitted liability.

**14.** Of course, a non-lawyer may not know in all instances when a suit is frivolous. Even though in this case it should have been clear that no claim existed, a client may sue her attorney for malpractice if the attorney pursued a frivolous claim on her behalf without educating her of the potential pitfalls of the suit and the consequences of meritless litigation. *Jerelds v. City of Orlando*, 194 F.Supp.2d 1305, 1311 n. 9 (M.D.Fla.2002). Moreover, this client may have a claim against the union representative who directed her to seek the assistance of incompetent counsel.

groundless [14] at the outset, Defendant's Motion for attorneys' fees under § 1988 is granted.

## C. Costs and Attorneys' Fees Pursuant to 28 U.S.C. § 1927

Defendant also seeks costs and attorneys' fees against Plaintiff's counsel, Mr. Head, pursuant to § 1927. Defendant asserts that Plaintiff's counsel continued to litigate after it became obvious that Plaintiff had no evidence to support a prima facie case of discrimination.

■■■■ Section 1927 provides that "any attorney ... who so multiples the proceedings in any case unreasonably and vexatiously may be required by the Court to personally satisfy the excess costs, the expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Counsel must be found to willfully abuse the judicial process "by conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991).[15] Because § 1927 serves to punish an attorney, courts must strictly construe it. *Pe-*

**15.** In *Avirgan*, for example, the court found the attorneys' conduct tantamount to bad faith because the attorneys failed to abandon a case even though discovery made it clear that the evidence did not bear out the claims alleged in the complaint. 932 F.2d at 1582. Other courts have found conduct tantamount to bad faith where attorneys committed rampant discovery abuses that created unnecessary delay and increased the costs of litigation and burden on the court. *See, e.g., Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544–45 (11th Cir.1993).

The *Malautea* court also recognized the common law "inherent power" to "impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Id.* at 1545 (quoting *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir.1985)). With this inherent power, a court may sanction a party or an attorney who demonstrates bad faith by delaying or disrupting litigation or by hampering the enforcement of a court order. *Id.* at 1545–46 (finding bad faith due to abu-

*terson v. BMI Refractories,* 124 F.3d 1386, 1395 (11th Cir.1997). Hence, before assessing fees, a court must find that all three statutory factors exist: a) unreasonable and vexatious conduct; b) multiplication of proceedings; and c) the sanctions may not exceed the costs, expenses, and fees reasonably incurred due to the conduct. *Id.* at 1396.

### a) "Unreasonable and Vexatious" Conduct

Because the statute does not define "vexatious," the word must be given its ordinary meaning. *Jerelds,* 194 F.Supp.2d at 1312 (defining "vexatious" as "lacking justification and intended to harass" or "without reasonable or probable cause or excuse.") (internal citations and quotations omitted). A circuit split exists as to whether "unreasonable and vexatious" requires a showing of subjective intent or bad faith.[16] At least one court in this District has found that the moving party need not show subjective bad faith. *O'Rear v. Amer. Family Life Ass. Co. of Columbus, Inc.,* 144 F.R.D. 410, 413–14 (M.D.Fla.1992) (finding plaintiff's counsel's behavior to be objectively in bad faith and vexatious, and thus sanctionable). Several Circuit courts support this view. *See, e.g., Jones v. Continental Corp.* 789 F.2d 1225,

1230 (6th Cir.1986) (holding that when an attorney "knows or reasonably should know that a claim pursued is frivolous . . ., a trial court does not err by assessing fees attributable to such actions against the attorney."); *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226–27 (7th Cir.1984) ("Where, as here, counsel's alleged misconduct was the filing and arguing of a claim, it is not sufficient that the claim be found meritless; the claim must be without a plausible legal or factual basis and lacking in justification.");[17] *McCandless v. Great Atlantic & Pacific Tea Co.,* 697 F.2d 198, 201 (7th Cir.1983) (noting in dicta that "[t]here would have been no reason to enact [§ 1927] if the standard were to be subjective bad faith as [*Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)] already provided for such awards."). Courts may infer intent from a total lack of factual or legal basis for a lawsuit. *Knorr,* 738 F.2d at 227.

■■■ Here, Plaintiff's counsel's had no reasonable basis to pursue this litigation, and from the record, the court may infer that Mr. Head intentionally—although perhaps without malice—filed and prosecuted claims that lacked any plausible legal or factual support. None of Mr. Head's arguments[18] to the contrary carry any

---

sive discovery tactics that delayed the proceedings).

**16.** The Eleventh Circuit has said that something more than lack of merit is required for imposition of sanctions under § 1927. *McMahan v. Toto,* 256 F.3d 1120, 1129 (11th Cir.2001).

**17.** The *Knorr* court added that although the attorney need not act out of malice, "the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis." 738 F.2d at 227. This rule, the court rationalized, protected three important interests: 1) society's interest in encouraging free access to court; 2) the client's interest in obtaining legal counsel who otherwise might

be deterred from taking a close case; 3) the attorney's ethical obligation to represent his client zealously but within the bounds of the law. *Id.*

**18.** Plaintiff's counsel seems not to grasp the nature of the remedy sought. Plaintiff's Counsel's Reply brief (Doc. 48) does not even refer to or analyze § 1927, and although his supporting memorandum (Doc. 49) cites cases discussing § 1927, it announces and utilizes standards for sanctions under Federal Rule of Civil Procedure 11. For example, Plaintiff's counsel admonishes Defendant's counsel for failing to provide him with a "safe harbor" notice. (Doc. 49 at ¶ 12). Opposing counsel must provide a safe harbor notice

weight or have any relevance to this determination.

■■■ First, he asserts that he conducted a reasonable inquiry [19] by conferring with Plaintiff and her union representatives and ascertaining that Plaintiff and her union advisors felt she had been "treated wrongly," that her treatment was different from that of a white male officer, and that she was being denied access to the OPD's grievance procedure. The "multiple interviews" that counsel conducted of Plaintiff, (Doc. 49 at ¶ 7), however, would and should have revealed that the OPD terminated Plaintiff for "untruthfulness." Without direct or circumstantial evidence that Plaintiff was pretextually terminated for a discriminatory reason, it is wholly irrelevant for Title VII purposes

that Plaintiff merely felt she was "treated wrongly." [20] Also, Mr. Head knew why Plaintiff was denied access to the grievance procedures; she was a probationary employee. Moreover, although Mr. Head "saw no evidence that Plaintiff brought her action in bad faith," that perception does not, as Mr. Head contends, reflect good faith on counsel's part. A client's good faith belief in a claim does not automatically make that claim meritorious.

Second, the fact that counsel served for eight years as chief counsel to Plaintiff's union, no matter what his success rate, is irrelevant to a determination that a case has a plausible legal or factual basis. [21] Third, in deciding whether to file and pursue a discrimination claim, it is of no consequence that counsel had or has "little

only when seeking Rule 11 sanctions, which were not sought herein. Fed. R. Civ. Pro. 11(c)(1)(A); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510–11 (6th Cir.2002) (Rule 11 sanctions unavailable when the moving party fails to timely serve safe harbor letter on opponent).

Although Defendant did not expressly move for Rule 11 sanctions against Plaintiff's counsel, both Defendant and Plaintiff's counsel touched on the issue in their briefs by analyzing whether a "reasonable inquiry" was conducted. The fact that Defendant did not provide Plaintiff's counsel with a written safe harbor notice prevents only Defendant from moving the Court for Rule 11 sanctions. Fed. R.Civ.P. 11(c)(1)(A). This Court could on its own initiative enter an order describing the conduct in violation of Rule 11(b) and directing counsel to show cause why it has not committed said violations. Fed. R. Civ. Pro. 11(c)(1)(B); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir.2001). The Court elects not to issue such a show cause order, given that Plaintiff's counsel already has briefed—at least in a circumspect manner—the issue of Rule 11 sanctions and would add nothing new by submitting a reply to a show cause order.

It is noteworthy that, in other litigation, Judge John Antoon II of this District, has issued Rule 11 sanctions against Mr. Head upon the recommendation of Magistrate Judge David Baker. *Perkins v. City of Orlan-*

*do*, 6:02–cv–37–Orl–28DAB, filed as Exhibit G to Defendant's Memorandum of Law. In that case, Judge Baker recommended that Mr. Head be ordered to participate in a continuing legal education program concerning civil rights litigation against local governments. *Id.* at 17.

**19.** Although the "reasonable inquiry" standard is more appropriately applicable to sanctions under Rule 11, courts using an objective standard of vexatiousness look to whether an attorney knew or should have known that the claims pursued were frivolous. *Jones*, 789 F.2d at 1230. Thus, the Court here may determine whether Mr. Head knew or should have known Plaintiff's case lacked any basis in part by analyzing what he knew or should have known due to a pre-Complaint reasonable inquiry.

**20.** It is even less relevant that Plaintiff's union advisors felt Plaintiff was "treated wrongly" by the OPD. (Doc. 49 at ¶ 4).

**21.** Counsel contends that the OPD's track record "defending such claims" is a "fair factor for review." (Doc. 49 at ¶ 1). The Court does not see, however, how the OPD's history with regard to union-management grievance proceedings would have any bearing upon a decision whether to file a Title VII action in federal court.

faith in the conclusions of the [OPD's] professional standards investigators." (Doc. 48 at ¶ 12). The submission of written decisions from past arbitrated cases does nothing to convince this Court otherwise, even if those decisions prove that arbitrators found various past OPD investigations to be unpersuasive, incomplete, lacking, or otherwise untrustworthy. Those administrative decisions are not related at all to the instant case and in no way implicate discrimination by the OPD against this Plaintiff.

Plaintiff's counsel claims he "prosecuted this case in a straight forward and usual manner." (Doc. 49 at ¶ 9). Such conduct would be fine, if the case was worth prosecuting in the first place. It was not. Plaintiff's counsel's intentional, continued prosecution of this case, which had no plausible legal or factual basis, was unreasonable and vexatious to the judicial process and tantamount to bad faith.[22]

### b) Multiplication of the Proceedings

█ The Court also concludes that Plaintiff's counsel multiplied the proceedings. Indeed, he practically admits that he continued to litigate the claims even after it became apparent from the discoverable facts that no evidence existed in support of Plaintiff's discrimination suit. Mr. Head tries to cast blame on Plaintiff by claiming he "bluntly informed his client of the mediocre chances for success" in obtaining her job back, but given that Plaintiff would not settle the case, he "had no choice but to continue to represent his client vigorously and to the best of his abilities." (Doc. 48 at ¶ 18; *see also* Doc. 49 at ¶ 11). Counsel did have a choice; he could have withdrawn[23] from representing a client who stubbornly insisted that he pursue frivolous litigation.

The Eleventh Circuit has stated that:

All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly.... Too many attorneys ... have allowed the objectives of the client to override their ancient duties as officers of the court.

*Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546–47 (11th Cir.1993).[24] Similarly, the Sixth Circuit has stated:

An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing

---

**22.** Defendant also asserts that both Plaintiff and Plaintiff's counsel pursued the racial discrimination claim in bad faith because they included that claim in the Complaint even though it was not first raised before the EEOC. In support, Defendant cites *Cribbs v. City of Altamonte Springs*, 2000 WL 33310904 (M.D.Fla.2000), *aff'd*, 252 F.3d 1363 (11th Cir.2001), in which this Court found that Mr. Head failed to exhaust his administrative remedies by including a gender discrimination claim in a disability suit. The Court finds that a race discrimination claim is far more similar to national origin discrimination claim than a gender discrimination claim is to a disability discrimination claim. Because it is a close call as to whether Plaintiff's counsel and Plaintiff failed to exhaust the administra-

tive remedies of the race discrimination claim, this Court will not find their inclusion of it in the Complaint as evidence of bad faith.

**23.** Mr. Head was not obligated to withdraw, but neither was he obligated to continue representing his client. Courts have held that a retained attorney does not act improperly by seeking permission to withdraw if the client will not follow his advice. *See, e.g., Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087–88 (7th Cir.1982), and cases cited therein.

**24.** The *Malautea* case involved discovery abuses, but the same general principles about attorneys' duties to the Court apply with equal force to the facts herein.

claims that are frivolous on the merits....

*Jones,* 789 F.2d at 1230. Counsel in this case would be wise to learn from the admonitions of the Eleventh and Sixth Circuits and mind his duties as an officer of the Court.

### c) Financial Nexus to the Excess Proceedings

The Court finds that there is a clear nexus between Mr. Head's wrongful conduct and the costs, expenses, and fees reasonably incurred in this litigation.

### D. Amount of Attorneys' Fee Award

 Defendant's counsel filed an affidavit with attached billing records which substantiate the claim for attorneys' fees in the amount of $31,955. (Doc. 45, Ex. B). Fees were based upon the actual hours expended and were calculated at a blended rate of $125 per hour. The affidavit of Dorothy F. Green, Esq., (Doc. 45, Ex. C), provides independent corroboration of the reasonableness of the amount of these fees, and neither Plaintiff nor Plaintiff's counsel have objected to the reasonableness of the fees. Accordingly, the Court finds that Defendant has met its burden of establishing the reasonableness of the attorneys' fee award in the amount of $31,955. *Ruszala v. Walt Disney World Co.,* 132 F.Supp.2d 1347, 1353–54 (M.D.Fla.2000) (citing Eleventh Circuit cases that set forth the method for determining reasonable hourly rate and reasonable number of hours expended).

### III. Conclusion

For the foregoing reasons, it is therefore

**ADJUDGED and ORDERED** that Defendant's Motion for Fees and Costs (Doc. 44) is **GRANTED.** The Clerk of the Court is directed to enter judgment for costs and attorneys' fees on behalf of Defendant and against Plaintiff and Plaintiff's

counsel, jointly and severally, in the aggregate amount of $33,761.28.